UNITED STATES of America, Plaintiff,

v.

Narciso SABORIT, Defendant.

No. CR 96–4043–MWB.

United States District Court,
N.D. Iowa,
Western Division.

June 23, 1997.

Timothy T. Jarman, Assistant U.S. Attorney, Sioux City, IA, for Plaintiff.

Kevin W. Techau, Assistant Federal Public Defender, Des Moines, IA, for Defendant.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT SABORIT'S MOTION FOR JUDGMENT OF ACQUITTAL AND MOTION FOR NEW TRIAL**

BENNETT, District Judge.

## TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ................................... 1137

II. LEGAL ANALYSIS ............................................... 1138
   A. Saborit's Renewed Motion For Judgment Of Acquittal .................... 1138
      1. Standard of review ............................................. 1138
      2. Sufficiency of the evidence ......................................... 1140
   B. Saborit's Motion For New Trial ...................................... 1144
      1. Standard of review ............................................. 1144
      2. Weight of evidence ............................................. 1145

III. CONCLUSION ................................................. 1148

Over a century ago, Sir Arthur Conan Doyle, speaking through his most famous character, Sherlock Holmes, wrote: "Circumstantial evidence is a very tricky thing ... it may seem to point very straight to one thing, but if you shift your own point of view a little, you may find it pointing in an equally uncompromising manner to something entirely different." SIR ARTHUR CONAN DOYLE, THE BOSCOMBE VALLEY MYSTERY, THE ADVENTURES OF SHERLOCK HOLMES 85 (Modern Library ed.1920) (1892). Defendant's post trial motions in this criminal case illuminate the simple truth of Holmes' observation.

This case is based exclusively on circumstantial evidence. Defendant Narciso Saborit was convicted by a jury of possession of crack cocaine with the intent to distribute. The government's evidence at trial consisted of items seized from an apartment that Saborit shared with two or three other individuals: packets of crack cocaine found in a jacket; a crack cocaine pipe; metal scouring pads that are sometimes employed to smoke crack cocaine; and four boxes of baking soda, a necessary ingredient for converting powdered cocaine into crack cocaine. The government also offered some bank records from accounts held by Saborit. Not surprisingly, Saborit's post trial motions for judgment of acquittal and for new trial focus on his challenge to the sufficiency of this circumstantial evidence to support his convic-

tion. Thus, the court is required to assess the sufficiency of the evidence under the related but differing standards of review governing motions for judgment of acquittal, under Federal Rule of Criminal Procedure 29, and motions for new trial, under Federal Rule of Criminal Procedure 33.

## I. INTRODUCTION AND BACKGROUND

On September 19, 1996, the United States Grand Jury for the Northern District of Iowa returned a one-count indictment against Narciso Saborit, charging him with possessing with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). The cocaine which forms the basis for this charge was discovered as the result of the execution of a search warrant for Saborit's residence on September 13, 1996.

On March 17, 1997, this case proceeded to trial before a jury. At trial, the government called three law enforcement officers as witnesses. All three officers were present at the time of the search of the apartment. The government also introduced a number of exhibits, and a stipulation with Saborit regarding his previous employment and his bank accounts. At the close of the government's evidence, Saborit moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 on the sole count of the indict-

ment. The court reserved ruling on this motion. At the conclusion of all the evidence, Saborit renewed his motion for judgment of acquittal, and the court once again reserved ruling. Saborit called two witnesses and he testified in his own defense. On March 19, 1997, the jury returned a verdict of guilty as to the charge of possessing with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). On March 27, 1997, Saborit filed a motion for judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29(c), and a motion for a new trial, pursuant to Federal Rule of Criminal Procedure 33. The government filed a timely resistance to each motion.

Oral arguments were held on Saborit's motions on June 13, 1997. The United States was represented by Timothy T. Jarman, Assistant United States Attorney. Saborit was represented by Kevin W. Techau, Assistant Federal Public Defender.

The court's consideration of defendant's motions begins with a recitation of the standard of review governing motions for judgment of acquittal under Federal Rule of Criminal Procedure 29, and then turns to a legal analysis of the issues raised by Saborit's motion for judgment of acquittal. Following that discussion, if necessary, the court will employ the same approach in addressing Saborit's motion for new trial.

## II. LEGAL ANALYSIS

### A. Saborit's Renewed Motion For Judgment Of Acquittal

Saborit's motion for judgment of acquittal challenges the sufficiency of the evidence to support his conviction. He asserts that the evidence presented at trial was insufficient to permit a reasonable jury to find him guilty beyond a reasonable doubt. A critical component of this argument is Saborit's reliance on one of two seemingly contradictory lines of Eighth Circuit authority. Thus, Saborit's argument requires the court to determine which of these two lines of Eighth Circuit authority must be applied when considering his challenge to the sufficiency of the evidence.

### 1. Standard of review

Federal Rule of Criminal Procedure 29 provides in relevant part as follows:

> The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

*Fed.R.Crim.P.* 29(a). Pursuant to Eighth Circuit precedent, it is well-settled that "[j]ury verdicts are not lightly overturned." *United States v. Hood,* 51 F.3d 128, 129 (8th Cir.1995); *accord United States v. Burks,* 934 F.2d 148, 151 (8th Cir.1991). The case law governing motions for judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29, imposes a significant constraint on the district court's authority to overturn a jury's verdict. *See United States v. Perkins,* 94 F.3d 429, 436 (8th Cir.1996) (" '[t]he standard of review of an appeal concerning the sufficiency of the evidence is very strict, and the verdict of the jury should not be overturned lightly.' ") (quoting *Burks,* 934 F.2d at 151), *cert. denied,* —— U.S. ——, 117 S.Ct. 1004, 136 L.Ed.2d 882 (1997); *United States v. Easley,* 70 F.3d 65, 67 (8th Cir.1995) ("The standard of review for a claim of insufficient evidence is very strict and the verdict of a jury should not be overturned lightly."), *cert. denied,* —— U.S. ——, 116 S.Ct. 1338, 134 L.Ed.2d 488 (1996); *United States v. Scott,* 64 F.3d 377, 380 (8th Cir.1995) (containing quotation from *Burks,* 934 F.2d at 151). The Eighth Circuit Court of Appeals has instructed that "[t]he jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *United States v. Moore,* 108 F.3d 878, 881 (8th Cir.1997); *Perkins,* 94 F.3d at 436 (" 'The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt.' ") (quoting *United States v. Erdman,* 953 F.2d 387, 389 (8th Cir.), *cert. denied,* 505 U.S. 1211, 112 S.Ct. 3009, 120 L.Ed.2d 883

(1992)); *accord United States v. Maza,* 93 F.3d 1390, 1399 (8th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1008, 136 L.Ed.2d 886 (1997); *United States v. Bates,* 77 F.3d 1101, 1104 (8th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 215, 136 L.Ed.2d 149 (1996); *Scott,* 64 F.3d at 380; *Hood,* 51 F.3d at 129; *United States v. Wilcox,* 50 F.3d 600, 602 (8th Cir.1995); *United States v. Smith,* 49 F.3d 475, 479 (8th Cir. 1995); *United States v. McMurray,* 34 F.3d 1405, 1412 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1164, 130 L.Ed.2d 1119 (1995); *United States v. Parker,* 32 F.3d 395, 399 (8th Cir.1994); *United States v. Garfinkel,* 29 F.3d 1253, 1257 (8th Cir.1994); *United States v. Johnson,* 12 F.3d 827, 831 (8th Cir.), *cert. denied,* 511 U.S. 1095, 114 S.Ct. 1860, 128 L.Ed.2d 482 (1994); *United States v. Rodriguez,* 812 F.2d 414, 416 (8th Cir.1987). Here, Saborit contends that his motion for judgment of acquittal should be granted because the government's evidence introduced at his trial would not permit a reasonable jury to find him guilty beyond a reasonable doubt.

In considering a motion for judgment of acquittal based on the sufficiency of the evidence, the court must "view the evidence in the light most favorable to the guilty verdict, giving the government the benefit of all reasonable inferences that may be drawn from the evidence." *United States v. Basile,* 109 F.3d 1304, 1310 (8th Cir.1997); *Moore,* 108 F.3d at 881 ("In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that supports the jury's verdict."); *United States v. Buford,* 108 F.3d 151, 153 (8th Cir.1997) ("the Court 'views the evidence in the light most favorable to the Government, resolving evidentiary conflicts in favor of the Government, and accepting all reasonable inferences drawn from the evidence that supports the jury's verdict.'") (quoting *United States v. Bates,* 77 F.3d 1101, 1104–05 (8th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 215, 136 L.Ed.2d 149 (1996)); *United States v. Kinshaw,* 71 F.3d 268, 271 (8th Cir.1995) (the district court must "view 'the evidence in the

light most favorable to the government, giving it the benefit of all reasonable inferences.'") (quoting *United States v. Nunn,* 940 F.2d 1128, 1131 (8th Cir.1991)); *Scott,* 64 F.3d at 380 (the court must view the evidence in the light most favorable to the government, resolving evidentiary conflicts in the government's favor and accepting all reasonable inferences drawn from the evidence that support the jury's verdict) (citing *Erdman,* 953 F.2d at 389); *accord United States v. Davis,* 103 F.3d 660, 667 (8th Cir.1996), *cert. denied,* —— U.S. ——, —— S.Ct. ——, —— L.Ed.2d —— (1997); *United States v. Ireland,* 62 F.3d 227, 230 (8th Cir.1995); *United States v. Johnson,* 56 F.3d 947, 956 (8th Cir.1995); *Hood,* 51 F.3d at 129; *Wilcox,* 50 F.3d at 602; *Smith,* 49 F.3d at 478–79; *United States v. McGuire,* 45 F.3d 1177, 1186 (8th Cir.), *cert. denied sub norm. Mandacina v. United States,* —— U.S. ——, 115 S.Ct. 2558, 132 L.Ed.2d 811 (1995); *United States v. Whitfield,* 31 F.3d 747, 748 (8th Cir.1994); *United States v. Mitchell,* 31 F.3d 628, 632 (8th Cir.1994); *Garfinkel,* 29 F.3d at 1257; *United States v. Ojeda,* 23 F.3d 1473, 1475 (8th Cir.1994); *United States v. Deitz,* 991 F.2d 443, 446 (8th Cir.1993). The court can overturn a jury's verdict only if " 'a reasonable fact-finder must have entertained a reasonable doubt about the government's proof' " of one of the essential elements of the crime charged. *Kinshaw,* 71 F.3d at 271 (quoting *Nunn,* 940 F.2d at 1131); *see Davis,* 103 F.3d at 667; *Wells,* 63 F.3d at 752; *Johnson,* 56 F.3d at 956; *Ojeda,* 23 F.3d at 1475; *Deitz,* 991 F.2d at 446. Furthermore, as the Eighth Circuit Court of Appeals has observed, "[t]his standard applies even when the conviction rests entirely on circumstantial evidence." *Davis,* 103 F.3d at 667; *United States v. Wilcox,* 50 F.3d 600, 602–03 (8th Cir.1995) ("because circumstantial evidence is intrinsically as probative as direct evidence, the same standard applies even where a conviction rests entirely on circumstantial evidence") (quoting *Durns v. United States,* 562 F.2d 542, 546 (8th Cir.), *cert. denied,* 434 U.S. 959, 98 S.Ct. 490, 54 L.Ed.2d 319 (1977)); *Segal,* 867 F.2d at 1178 (essential elements of a charge may be proved by circumstantial as well as direct evidence).

In addition to allowing a conviction to be based on circumstantial and/or direct evidence, the Eighth Circuit has instructed that "[t]he evidence need not exclude every reasonable hypothesis except guilt." *United States v. Baker*, 98 F.3d 330, 338 (8th Cir. 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1456, 137 L.Ed.2d 561 (1997); *accord Hill v. Norris*, 96 F.3d 1085, 1088 (8th Cir.1996); *Easley*, 70 F.3d at 67; *United States v. Christner*, 66 F.3d 922, 925 (8th Cir.1995); *Scott*, 64 F.3d at 380; *Parker*, 32 F.3d at 399; *United States v. R.E.J.*, 29 F.3d 375, 376 (8th Cir.1994); *United States v. Jones*, 23 F.3d 1407, 1409 (8th Cir.1994); *United States v. Armstrong*, 16 F.3d 289, 292 (8th Cir.1994); *Burks*, 934 F.2d at 151; *United States v. Stuart*, 923 F.2d 607, 611 (8th Cir.1991); *United States v. Nabors*, 762 F.2d 642, 653 (8th Cir.1985); *United States v. Newton*, 756 F.2d 53, 54 (8th Cir.1985). The court can neither weigh the evidence nor assess the credibility of the witnesses; these tasks belong exclusively to the jury. *Wells*, 63 F.3d at 752; *see also Ireland*, 62 F.3d at 230 (it is the jury's job to judge the credibility of witnesses and to resolve contradictions in the evidence) (citing *United States v. Agofsky*, 20 F.3d 866, 869 (8th Cir.), *cert. denied*, 513 U.S. 909, 115 S.Ct. 280, 130 L.Ed.2d 196 (1994)). Having examined the appropriate standard of review, the court turns to the consideration of Saborit's motion.

### 2. Sufficiency of the evidence

As the court pointed out above, Saborit's motion for judgment of acquittal raises, *inter alia*, the question, which of two apparently inharmonious lines of Eighth Circuit authority must be applied when considering a challenge to the sufficiency of the evidence to sustain a criminal conviction. The Eighth Circuit Court of Appeals has held on over a dozen occasions in the past ten years that if the evidence reasonably supports two contrary theories, the reviewing court must not disturb the jury's determination. *Baker*, 98 F.3d at 338 (" 'If the evidence rationally supports two conflicting hypotheses, the reviewing court will not disturb the conviction.' ") (quoting *Burks*, 934 F.2d at 151); *United States v. Willis*, 89 F.3d 1371, 1376 (8th Cir.) ("If the evidence rationally supports two con-

flicting hypotheses, we will not disturb the convictions."), *cert. denied*, —— U.S. ——, 117 S.Ct. 273, 136 L.Ed.2d 196 (1996); *United States v. Anderson*, 78 F.3d 420, 422 (8th Cir.1996) (holding that court "may not disturb the conviction if the evidence rationally supports two conflicting hypotheses."); *Christner*, 66 F.3d at 925 (quoting *Burks*, 934 F.2d at 151); *Scott*, 64 F.3d at 380 (quoting *Burks*, 934 F.2d at 151); *Parker*, 32 F.3d at 399 (quoting *Burks*, 934 F.2d at 151); *United States v. Johnson*, 18 F.3d 641, 645 (8th Cir.1994) (" 'If the evidence rationally supports two conflicting hypotheses, a reviewing court will not disturb a conviction.' ") (quoting *United States v. Holm*, 836 F.2d 1119, 1122 (8th Cir.1988)); *United States v. Weston*, 4 F.3d 672, 674 (8th Cir.1993) (noting that "if the evidence rationally supports two conflicting hypotheses, we cannot disturb the conviction."); *United States v. Nelson*, 984 F.2d 894, 899 (8th Cir.) ("If the evidence rationally supports two conflicting hypotheses, this Court cannot disturb the conviction."), *cert denied*, 508 U.S. 966, 113 S.Ct. 2945, 124 L.Ed.2d 693 (1993); *United States v. Garrett*, 961 F.2d 743, 746 (8th Cir.1992) (same quotation from *Holm* as found in *Johnson*, 18 F.3d at 645); *United States v. Brown*, 921 F.2d 785, 791 (8th Cir.1990) ("This court will not disturb a conviction if the evidence rationally supports two conflicting hypotheses."); *United States v. Schubel*, 912 F.2d 952, 955 (8th Cir.1990) ("If the evidence rationally supports two conflicting hypotheses, the reviewing court will not disturb a conviction."); *United States v. Carter*, 854 F.2d 1102, 1107 (8th Cir.1988) (nearly identical quotation as that found in *Schubel*); *United States v. O'Connell*, 841 F.2d 1408, 1424 (8th Cir.1988) (same quotation as found in *Carter*, 854 F.2d at 1107), *cert. denied*, 488 U.S. 1011, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989).

Saborit argues that there is a conflict between this *Baker–Burks* line of authorities, and another line of Eighth Circuit Court of Appeals decisions, which hold that " '[w]here the government's evidence is equally strong to infer innocence of the crime charged as it is to infer guilt, the verdict must be one of not guilty and the court has a duty to direct

an acquittal." *Davis,* 103 F.3d at 667 (quoting *United States v. Kelton,* 446 F.2d 669, 671 (8th Cir.1971)); *accord United States v. Hepp,* 656 F.2d 350, 353 (8th Cir.1981) (holding that a "conviction cannot rest on evidence that no more supports guilt than innocence."); *United States v. Brown,* 584 F.2d 252, 262 (8th Cir.1978) (containing the same quotation from *Kelton* as found in *Davis* ), *cert. denied,* 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458 (1979); *United States v. Steinhilber,* 484 F.2d 386, 389 (8th Cir.1973) (containing the same quotation from *Kelton* as found in *Davis* ); *United States v. Williams,* 470 F.2d 1339, 1343 (8th Cir.) (holding that the evidence was insufficient to sustain conviction where "the evidence, taken in the light most favorable to the government, is clearly as consistent with innocence as with guilt."), *cert. denied,* 411 U.S. 936, 93 S.Ct. 1912, 36 L.Ed.2d 396 (1973); *United States v. Jensen,* 462 F.2d 763, 764 (8th Cir.1972) (containing the same quotation from *Kelton* as found in *Davis* ); *Lerma v. United States,* 387 F.2d 187, 188 (8th Cir.) (holding that the jury was properly instructed that if the circumstances to be considered in determining defendant's guilt are just as consistent with innocence as guilt, then the verdict must be one of not guilty), *cert. denied,* 391 U.S. 907, 88 S.Ct. 1658, 20 L.Ed.2d 421 (1968). Saborit contends that the court must apply the standard found in the *Davis–Hepp* line of authorities.

The court notes that the Eighth Circuit has never explicitly repudiated the *Davis–Hepp* line of authorities. Indeed, the *Davis* decision was handed down only last year. However, another Eighth Circuit decision gives the court some pause regarding the continued viability of this line of authorities. In *United States v. Coyle,* 998 F.2d 548 (8th Cir.1993), *cert. denied sub nom. Swedzinski v. United States,* 510 U.S. 1095, 114 S.Ct. 928, 127 L.Ed.2d 220 (1994), the Eighth Circuit Court of Appeals, although questioning the continued validity of the *Davis–Hepp* line of authorities in light of the United States Supreme Court's decision in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), declined to determine the continued validity of this line of authority because there was sufficient evidence to convict regardless of the standard applied, *Coyle,* 998 F.2d at 549 n. 2.[1] Given the Supreme Court's pronouncement in *Jackson,* and the Eighth Circuit's numerous citations following the *Baker–Burks* line of authorities, the court finds it difficult to harmonize the *Davis–Hepp* criterion with the *Baker–Burks* standard. Indeed, even though the *Davis* decision is of recent origin, the remaining cases following the *Davis–Hepp* standard are between sixteen and twenty-nine years old, and antedate the decisions following the *Baker–Burks* line of authorities. Such circumstances lead the court to question the continued validity of the *Davis–Hepp* standard in this circuit. However, because the court con-

---

1. In *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the court repudiated the "no evidence" rule of *Thompson v. Louisville,* 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960), as inadequate to protect a defendant from misapplications of the reasonable doubt standard constitutionally necessary for a criminal conviction. *Jackson,* 443 U.S. at 320, 99 S.Ct. at 2789–90. In assessing such a claim, a court should not " 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' " *Id.* at 318–19, 99 S.Ct. at 2789 (emphasis in original) (citation omitted). Rather, in order to adequately protect a defendant from such a misapplication, the Supreme Court held that in evaluating a federal habeas petitioner's challenge to the sufficiency of the evidence the question for the court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct.

at 2789 (emphasis in original). The Supreme Court has cautioned the federal courts that, under this standard, the jury retains almost the entire range of its traditional discretion as sole judge of the facts:

> This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental protection of due process of law.

*Id.* at 319, 99 S.Ct. at 2789 (emphasis in original) (footnotes omitted).

cludes that regardless of the standard applied in this case the result reached by the court would be the same, the court need not determine the continued legitimacy of the *Davis–Hepp* standard today nor attempt to harmonize that line of authorities with the *Baker–Burks* line of authorities.

**2.** The Fifth Circuit has consistently applied its variation of the *Davis–Hepp* standard. *United States v. Salvatore,* 110 F.3d 1131, 1136 (5th Cir.1997) ("if the evidence 'gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence,' the conviction must be reversed.") (quoting *United States v. Salazar,* 66 F.3d 723, 728 (5th Cir.1995)); *United States v. Schuchmann,* 84 F.3d 752, 753 (5th Cir.1996) "If, on the other hand, 'the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, the conviction should be reversed.'" (quoting *United States v. Pennington,* 20 F.3d 593, 597 (5th Cir. 1994)); *United States v. Garcia,* 86 F.3d 394, 398 (5th Cir.1996) (same), *cert. denied,* —— U.S. ——, 117 S.Ct. 752, 136 L.Ed.2d 688 (1997); *United States v. Giraldi,* 86 F.3d 1368, 1371 (5th Cir. 1996) (same); *United States v. Lopez,* 74 F.3d 575, 577 (5th Cir.1996) (same), *cert. denied,* —— U.S. ——, 116 S.Ct. 1867, 134 L.Ed.2d 964 (1996); *United States v. Dean,* 59 F.3d 1479, 1484 (5th Cir.1995) (same), *cert. denied,* —— U.S. ——, 116 S.Ct. 794, 133 L.Ed.2d 742 (1996); *United States v. Mackay,* 33 F.3d 489, 492 (5th Cir.1994) (same); *United States v. Gonzalez–Rodriguez,* 966 F.2d 918, 920 (5th Cir.1992) (same); *United States v. Menesses,* 962 F.2d 420, 426 (5th Cir.1992); *United States v. Sanchez,* 961 F.2d 1169, 1173 (5th Cir.1992) (same), *cert. denied,* 506 U.S. 918, 113 S.Ct. 330, 121 L.Ed.2d 248 (1992); *United States v. Fortenberry,* 919 F.2d 923, 926 (5th Cir.1990) (same); *Clark v. Procunier,* 755 F.2d 394, 396 (5th Cir.1985) (same). The Fifth Circuit Court of Appeals succinctly explained its rationale for supporting its variation of the *Davis–Hepp* standard in *Sanchez:* "[W]here an equal or nearly equal theory of guilt and a theory of innocence is supported by the evidence viewed in the light most favorable to the prosecution, 'a reasonable jury must necessarily entertain a reasonable doubt.'" *Sanchez,* 961 F.2d at 1173. The First Circuit Court of Appeals has adopted the same standard as applied in the Fifth Circuit. *United States v. Fulmer,* 108 F.3d 1486, 1491 (1st Cir.1997) (" '[i]f the "evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged," this court must reverse the conviction.' ") (quoting *United States v. Andujar,* 49 F.3d 16, 20 (1st Cir.1995) (quoting in turn *Sanchez,* 961 F.2d at 1173); *United States v. Flores–Rivera,* 56 F.3d 319, 323 (1st Cir.1995) (containing the same quotation from *Sanchez,* 961 F.2d at 1173).) Similarly, the Eleventh Circuit has approved its

Although the court has determined that it need not ascertain the continued validity of the *Davis–Hepp* standard in the Eighth Circuit, the court notes that a review of the other circuits reveals that variations of the *Davis–Hepp* standard remain valid in a majority of the circuits.[2] For the reasons ex-

variation of the *Davis–Hepp* standard in two post-*Jackson v. Virginia* decisions. *Cosby v. Jones,* 682 F.2d 1373, 1383 (11th Cir.1982) ("[i]f the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged, then a reasonable jury must necessarily entertain a reasonable doubt."); *accord Martin v. Alabama,* 730 F.2d 721, 724 (11th Cir.1984) (quoting *Cosby*). The Sixth Circuit has also confirmed a variation of the *Davis–Hepp* standard in a post-*Jackson v. Virginia* decision, *United States v. Combs,* 672 F.2d 574, 576–77 (6th Cir.1982) (" 'Although circumstantial evidence alone may sustain a guilty verdict, even if it fails to exclude all reasonable hypotheses consistent with a theory of innocence ... where the jury is called upon to choose between "reasonable probabilities" of equal weight, one innocent and the other criminal, a conviction cannot stand.'") (quoting *United States v. Campion,* 560 F.2d 751, 753–54 (6th Cir.1977)), *cert. denied,* 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982). Likewise, the Second Circuit Court of Appeals has held that convictions which are based on evidence that is "at least as consistent with innocence as with guilt," are subject to reversal. *United States v. D'Amato,* 39 F.3d 1249, 1256 (2d Cir.1994) ("the government must do more than introduce evidence ' "at least as consistent with innocence as with guilt." ' ")(quoting *United States v. Mulheren,* 938 F.2d 364, 372 (2d Cir.1991) (quoting in turn *United States v. Mankani,* 738 F.2d 538, 547 (2d Cir.1984))). Indeed, even the Seventh Circuit Court of Appeals, whose precedent forms the source of the Eighth Circuit's *Baker–Burks* test, has held that " '[w]here the evidence as to an element of a crime is equally consistent with a theory of innocence as a theory of guilt, that evidence necessarily fails to establish guilt beyond a reasonable doubt.'" *United States v. Harris,* 942 F.2d 1125, 1129 (7th Cir.1991) (quoting *United States v. Delay,* 440 F.2d 566, 568 (7th Cir.1971)). The Tenth Circuit Court of Appeals, however, has flatly rejected application of a *Davis–Hepp* type standard following *Jackson v. Virginia. United States v. Price,* 795 F.2d 61, 62 (10th Cir.1986) (" 'The use of this language is unfortunate for it suggests that a criminal conviction cannot be sustained if a reasonable hypothesis could be designed which is consistent with innocence. Indeed, if there was any validity to this proposition after *Corbin [v. United States,* 253 F.2d 646 (10th Cir.1958) ], it was flatly rejected by the Supreme Court in *Jackson v. Virginia,* 443 U.S. 307 [99 S.Ct. 2781, 61 L.Ed.2d

pressed by the Fifth Circuit in *Sanchez,* 961 F.2d at 1173, the court believes that the *Davis–Hepp* line of authorities is the better reasoned view. Nevertheless, because the *Baker–Burks* line of authorities appears to be the currently preferred approach in the Eighth Circuit, the court will proceed to analyze the facts of this case under that approach.

■ In order to convict Saborit of possessing crack cocaine with the intent to distribute, under 21 U.S.C. § 841(a), the government had to show, beyond a reasonable doubt, that: (1) Saborit was in possession of crack cocaine; (2) Saborit knew he was in possession of crack cocaine; and (3) Saborit intended to distribute some or all of the crack cocaine. *Buford,* 108 F.3d at 153; *United States v. Thomas,* 58 F.3d 1318, 1322 (8th Cir.1995). Possession may be either actual or constructive. *Buford,* 108 F.3d at 153; *Anderson,* 78 F.3d at 422; *United States v. Kiser,* 948 F.2d 418, 425 (8th Cir. 1991), *cert. denied,* 503 U.S. 983, 112 S.Ct. 1666, 118 L.Ed.2d 387 (1992). " 'Constructive possession exists when a person has ownership, dominion, or actual control over the contraband.' " *Buford,* 108 F.3d at 153 (quoting *Anderson,* 78 F.3d at 422).

Saborit contends that the evidence produced in the government's case in chief reasonably supports two contrary theories: that he possessed crack cocaine with the intent to distribute it, or that he was merely a resident of an apartment where drugs and drug paraphernalia were found. From this scenario, Saborit contends that his conviction is based purely on speculation by the jury and cannot stand. Although the evidence introduced in the government's case in chief could reasonably support two contrary theories, the court will not disturb the jury's determination in

this case.[3] *See Baker,* 98 F.3d at 338; *Willis,* 89 F.3d at 1376; *Anderson,* 78 F.3d at 422; *Christner,* 66 F.3d at 925; *Scott,* 64 F.3d at 380; *Parker,* 32 F.3d at 399; *Johnson,* 18 F.3d at 645; *Weston,* 4 F.3d at 674; *Nelson,* 984 F.2d at 899; *Burks,* 934 F.2d at 151; *Brown,* 921 F.2d at 791; *Schubel,* 912 F.2d at 955; *Carter,* 854 F.2d at 1107; *O'Connell,* 841 F.2d at 1424; *Holm,* 836 F.2d at 1122.

Viewing the totality of the evidence in the light most favorable to the government, the evidence is sufficient, albeit just barely, for the jury to have found, by some interpretation of the evidence presented, that Saborit was guilty beyond a reasonable doubt. The jury heard testimony and viewed documentary evidence, when viewed in the light most favorable to the government, which supported this conclusion. During a search of an apartment that Saborit and his girlfriend, LaVerne M. Stanifer rented, law enforcement officers found 52.78 grams of crack cocaine in a jacket located in a bedroom closet in the apartment. The government produced expert witness testimony that the amount of cocaine found in the apartment was greater than the amount usually held for personal use. Expert witness testimony introduced at trial placed the value of the crack cocaine found in the jacket at more than $5,000. The jacket which contained the crack appeared to a man's jacket and was located with other men's clothing in the bedroom closet. Saborit was the only man residing at the apartment. The search of the apartment also turned up drug usage paraphernalia, including a metal pipe for smoking crack cocaine, and a box of Chore Boy scouring pads. The government introduced testimony that Chore Boy scouring pads are employed during the process of smoking crack cocaine to hold the "rock" of crack cocaine in

---

560] (1979).' ") (quoting *United States v. Hooks,* 780 F.2d 1526, 1530–31 (10th Cir.1986)).

**3.** Although the evidence in this case could reasonably support two contrary theories, viewing the totality of the evidence in the light most favorable to the government, as this court must, *see Basile,* 109 F.3d at 1310; *Moore,* 108 F.3d at 881; *Buford,* 108 F.3d at 153, the evidence here does not give rise to equal inferences of innocence and guilt. Rather, when viewed in the

light most favorable to the government, the evidence more strongly supports Saborit's guilt than innocence. Because the evidence, when viewed in such a manner, supports guilt more than innocence, Saborit is not entitled to a judgment of acquittal under the *Davis–Hepp* standard. Thus, the result reached by the court in this case, to deny Saborit's motion for judgment of acquittal, would be the same regardless of whether the court applied the *Baker–Burks* or *Davis–Hepp* standard.

place. Law enforcement officers also found four boxes of baking soda in the apartment's kitchen. A law enforcement officer testified at trial that baking soda is a central ingredient in the process of transforming powdered cocaine into crack cocaine. Finally, the police found in the apartment evidence which could constitute cocaine distribution proceeds. The police discovered more than $1,200 in cash in Saborit's shorts. Additionally, five Norwest Bank deposit receipts from Saborit's bank accounts were introduced at trial. These deposit receipts showed deposits of $300 on May 28, 1996, $1,000 on August 5, 1996, $3,000 on August 13, 1996, $1,300 on August 22, 1996, and $2,200 on August 26, 1996. While Saborit had received a settlement for a personal injury claim in October 1995, the parties stipulated that Saborit had not earned any wages or received unemployment compensation since the summer of 1985.

■ Saborit points to possible conflicting interpretations of the evidence in an attempt to discredit the verdict. However, regardless of the possible interpretations to be given to the evidence, the court is bound in its review to only consider the reasonable inferences that may be drawn when the evidence is viewed in the light most favorable to the government. *See Basile,* 109 F.3d at 1310; *Moore,* 108 F.3d at 881; *Buford,* 108 F.3d at 153; *Bates,* 77 F.3d at 1104–05; *Kinshaw,* 71 F.3d at 271. The jury was responsible for resolving conflicts in the evidence. Although the court views this as an extremely close question, based on the evidence discussed in detail above, a reasonable jury could have concluded that (1) Saborit was in possession of crack cocaine; (2) Saborit knew he was in possession of crack cocaine; and (3) Saborit intended to distribute some or all of the crack cocaine. Thus, the court will not overturn the jury's verdict of guilt on the charge of possessing with intent to distribute cocaine and acquit Saborit. Thus, the court denies Saborit's motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.

In addition to filing a renewed motion for judgment of acquittal, Saborit has also filed a motion for new trial pursuant to Federal Rule of Criminal Procedure 33. Because these motions have differing standards, the court will now proceed to consider Saborit's motion for new trial pursuant to Rule 33.

## B. Saborit's Motion For New Trial

In his motion for new trial, Saborit asks that, even if the court finds the evidence sufficient to sustain the jury verdict, the court grant him a new trial because the verdict is suspect given the weight of the evidence produced at trial. Before turning to discuss Saborit's specific arguments in support of his motion, the court will examine Rule 33 and the appropriate standard of review for Saborit's motion for new trial.

### 1. Standard of review

Federal Rule of Criminal Procedure 33 provides in relevant part as follows: "The court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." *Fed.R.Crim.P.* 33. District courts have broad discretion in passing upon motions for new trial and such rulings are subject to reversal only for a clear abuse of discretion. *See United States v. Brown,* 108 F.3d 863, 866 (8th Cir.1997); *United States v. Blumeyer,* 62 F.3d 1013, 1015 (8th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1263, 134 L.Ed.2d 212 (1996); *United States v. Johnson,* 982 F.2d 1192, 1196 (8th Cir.1992); *United States v. Schnurstein,* 977 F.2d 449, 454 (8th Cir.1992); *United States v. Van Kirk,* 935 F.2d 932, 934 (8th Cir.1991); *United States v. McBride,* 862 F.2d 1316, 1319 (8th Cir.1988); *United States v. Copple,* 827 F.2d 1182, 1191 (8th Cir.1987), *cert. denied,* 484 U.S. 1073, 108 S.Ct. 1046, 98 L.Ed.2d 1009 (1988); *Vasser v. Solem,* 763 F.2d 975, 979 (8th Cir.1985); *United States v. Lincoln,* 630 F.2d 1313, 1319 (8th Cir.1980); *United States v. Wynde,* 579 F.2d 1088, 1097 (8th Cir.), *cert. denied,* 439 U.S. 871, 99 S.Ct. 204, 58 L.Ed.2d 184 (1978); *United States v. Bohn,* 508 F.2d 1145, 1150 (8th Cir.), *cert. denied,* 421 U.S. 947, 95 S.Ct. 1676, 44 L.Ed.2d 100 (1975).

■ A court evaluates a Rule 33 motion from a different vantage point than it evaluates a Rule 29 motion for judgment of acquittal. "A district court's power to order a new

trial is greater than its power to grant a motion for acquittal." *United States v. Ruiz*, 105 F.3d 1492, 1501 (1st Cir.1997); *accord United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1211 (9th Cir.1992) ("A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal."). In assessing whether Saborit is entitled to a new trial on the ground that the verdict is contrary to the weight of the evidence, "the district court weighs the evidence and evaluates anew the credibility of the witnesses to determine if a miscarriage of justice may have occurred." *Davis*, 103 F.3d at 668; *accord United States v. Misle Bus & Equip. Co.*, 967 F.2d 1227, 1232 (8th Cir.1992); *United States v. Brown*, 956 F.2d 782, 786 (8th Cir.1992); *United States v. Lanier*, 838 F.2d 281, 284 (8th Cir.1988); *Rodriguez*, 812 F.2d at 417; *Lincoln*, 630 F.2d at 1319; *see United States v. Cruz*, 993 F.2d 164, 167 (8th Cir.1993). The Eighth Circuit Court of Appeals explained in *Rodriguez:*

> "When a motion for a new trial is made on the ground that the verdict is contrary to the weight of the evidence, the issues are far different from those raised by a motion for judgment of acquittal. The question is whether he is entitled to a new trial. In assessing the defendant's right to a new trial, the court must weigh the evidence and in doing so evaluate for itself the credibility of the witnesses." *United States v. Lincoln*, 630 F.2d at 1316. The court will only set aside the verdict if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred.

*Rodriguez*, 812 F.2d at 417. The Fifth Circuit Court of Appeals recently made a similar observation:

> According to the Federal Rules of Criminal Procedure, a court on motion of a defendant may grant a new trial if required in the interest of justice. *Fed. R.Crim.P.* 33. The trial judge may weigh the evidence and may assess the credibility of the witness & during its consideration of the motion for new trial. *Tibbs v. Florida*, 457 U.S. 31, 37–38, 102 S.Ct. 2211, 2215–16, 72 L.Ed.2d 652 (1982). No such discretion is allowed when the court decides a motion

for a judgment of acquittal. Indeed, the court must view the evidence in a light most favorable to the verdict. In effect, the court assumes the truth of the evidence offered by the prosecution. Consequently, a review of a motion for new trial is reviewed under a more lenient standard than a motion for judgment of acquittal.

*United States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir.1997) (footnote omitted). The authority to grant new trials, however, "should be used sparingly and with caution." *Lincoln*, 630 F.2d at 1319.

### 2. *Weight of evidence*

As explained above, to convict Saborit on a violation of 21 U.S.C. § 841(a)(1), the government had to prove that he knowingly possessed the crack cocaine with the intent to distribute. *Buford*, 108 F.3d at 153; *Thomas*, 58 F.3d at 1322; *United States v. Nunn*, 940 F.2d 1128, 1132 (8th Cir.1991); *United States v. Matra*, 841 F.2d 837, 840 (8th Cir.1988). The government offered no evidence that Saborit actually possessed the crack cocaine found in the apartment. Since Saborit did not have actual possession of the crack cocaine, the issue is whether he had constructive possession of it. "Proof of constructive possession is sufficient to satisfy the element of knowing possession." *United States v. McCracken*, 110 F.3d 535, 541 (8th Cir.1997); *accord United States v. Perkins*, 94 F.3d 429, 436 (8th Cir.1996) (citing *United States v. Townley*, 942 F.2d 1324, 1325 (8th Cir.1991)), *cert. denied*, — U.S. —, 117 S.Ct. 1004, 136 L.Ed.2d 882 (1997). "Constructive possession of drugs can be established if a person has 'ownership, dominion or control over the contraband itself, or dominion over the premises in which the contraband is concealed.'" *McCracken*, 110 F.3d at 541 (quoting *United States v. Ojeda*, 23 F.3d 1473, 1475 (8th Cir.1994)); *accord Schubel*, 912 F.2d at 955; *Matra*, 841 F.2d at 840; *see Buford*, 108 F.3d at 153 ("'Constructive possession exists when a person has ownership, dominion, or actual control over the contraband.'") (quoting *Anderson*, 78 F.3d at 422).

Here, the evidence showed that Saborit was a resident of the apartment. However,

no direct evidence was produced that he had dominion and control over the drugs found in the apartment. The drugs were found secreted in a jacket in a bedroom closet. The closet, however, contained both men's and women's clothing. Furthermore, the jacket was of a style and size which permitted it to be worn by either a man or a woman.[4] No evidence was offered by the government linking Saborit to the jacket, other than it being found in the apartment. No fingerprint evidence, other physical or scientific evidence, or eyewitness testimony, connected him with the coat.

Furthermore, although Saborit was found in the apartment, the drugs were not in plain view. His girlfriend, LaVerne M. Stanifer, and not Saborit, disclosed to the police the location of the crack cocaine in the jacket. This disclosure suggests it was at least equally plausible, if not more likely, that LaVerne was the resident of the apartment who had knowing dominion and control of the crack cocaine seized from the jacket. It must be remembered that Saborit was not the only resident of the apartment. Rather, Saborit, LaVerne, and possibly one other person, resided in the apartment at the time of the search.[5] *See United States v. Thorne,* 997 F.2d 1504, 1510 (D.C.Cir.) (holding that the fact that four other people shared an apartment with defendant rebutted inference that he was in possession of drugs found in proximity with him), *cert. denied,* 510 U.S. 999, 114 S.Ct. 568, 126 L.Ed.2d 467 (1993); *Evans v. United States,* 257 F.2d 121, 128 (9th Cir.) (instructing that where a defendant is "not in exclusive possession of the premises, it may not be inferred that he knew of the presence of the narcotics and had control over them,

unless there are other incriminating statements or circumstances tending to buttress such an inference."), *cert. denied,* 358 U.S. 866, 79 S.Ct. 98, 3 L.Ed.2d 99 (1958).

The mere existence of four boxes of baking soda adds very little to the evidence against Saborit. The baking soda evidence was offered to show that material necessary for the conversion of powdered cocaine into crack cocaine was present in the apartment. The inference suggested by such evidence is that the apartment was used to manufacture crack cocaine. The government, however, offered no evidence which would tie Saborit to the baking soda. Additionally, the government offered no evidence that the baking soda found in the apartment was to be used in the conversion of powdered cocaine. The government introduced no evidence that the apartment was currently set up for drug manufacturing activities or that the other materials necessary for producing crack cocaine, such as powdered cocaine and drug packaging materials, were located in the apartment. Indeed, the government offered no evidence that crack cocaine had ever been manufactured in the apartment. Similarly, the finding of a crack pipe and Chore Boy pads in the apartment provides only a modicum of support for the government's case against Saborit given the fact that the government offered no evidence which would suggest Saborit had actually physically possessed either the crack pipe or Chore Boy pads found in the apartment. Instead, the finding of the crack pipe and Chore Boy pads was entirely consistent with Saborit's testimony that his girlfriend was a crack user.[6]

Finally, the value of the government's evidence of Saborit's monetary transactions and

---

**4.** The court notes Officer Marti Reilly indicated at trial that LaVerne is approximately five feet tall and weighs 165 pounds. Although Saborit's physical characteristics do not appear in the record, the court's eyeball estimate of Saborit's height and weight is that he is taller than LaVerne but weighs less than her. Given LaVerne and Saborit's respective physical dimensions, the jacket found in the apartment which contained the crack cocaine would have fit either LaVerne or Saborit.

**5.** Saborit testified at trial that a woman named Maria Mendez lived with him and LaVerne at the apartment.

**6.** Indeed, the evidence produced at trial points more strongly to LaVerne's involvement and guilt than that of Saborit. It was she, not Saborit, who pointed out to the police where the drugs were stored in the apartment. Moreover, the coat where the drugs were stored could have as easily been her jacket as that of Saborit. Additionally, she had equal access to the baking soda and other drug paraphernalia located in the apartment. Finally, Saborit's testimony that LaVerne was addicted to crack cocaine clearly provides her with a portal to the drug subculture and access to the denizens of that domain.

his possession of a fair amount of cash is deflated by the uncontradicted evidence that he received $26,800 in the fall of 1995 for a personal injury claim. The evidence introduced by the government at trial concerning Saborit's monetary transactions did not demonstrate financial activity on his part which exceeded the scope of his personal injury recovery. Rather, the financial evidence was entirely consistent with Saborit's testimony regarding his monetary transactions. Given this record, the court concludes that the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred in this case.[7]

The court's conclusion is buttressed by the fact that a number of federal circuit court of appeals decisions have reversed convictions on facts similar to the facts here. Three examples of such cases are the decisions in *United States v. Brown,* 3 F.3d 673 (3d Cir.), *cert. denied,* 510 U.S. 1017, 114 S.Ct. 615, 126 L.Ed.2d 579 (1993); *Thorne,* 997 F.2d 1504; and *United States v. Bonham,* 477 F.2d 1137 (3d Cir.1973) (*en banc*). Indeed, in each of these three decisions, the circuit courts not only reversed the defendants' convictions, but concluded that the evidence was insufficient to sustain their convictions. *Brown,* 3 F.3d at 684; *Thorne,* 997 F.2d at 1511; *Bonham,* 477 F.2d at 1139.

In *Brown,* the police, acting on a tip, searched defendant Brown's home for drugs. During the search, in the upstairs sewing room, the police found a pair of shorts and a switchblade. While the search was being conducted, defendant Ama Baltimore arrived at the house, inserted a key into the door, and was arrested as she entered the house. *Brown,* 3 F.3d at 675. When confronted with the shorts and switchblade, Baltimore admitted that they were hers. *Id.* She protested her arrest, stating "but you can't arrest me because I am in my own house." *Id.* Substantial quantities of heroin, cocaine powder, and crack cocaine were found in the refrigerator in the kitchen, the kitchen closet, and one of the house's upstairs bedrooms. Equipment and supplies to prepare, cook, cut and distribute the drugs were also found in

the bedroom. *Id.* The government contended that the facts were sufficient to establish Baltimore's possession of the drugs found in the house. The Third Circuit Court of Appeals reversed Baltimore's conviction for insufficient evidence of possession. *Id.* at 684. The court concluded that the evidence showed that Baltimore had access to or resided in the house and knew of the presence of the drugs, but did not show she had dominion and control over them. *Id.* The court found that Baltimore's possession of a key to the house, her attempted entry, and her statement merely showed that she had some control over the house, not the drugs. *Id.* at 682–83. In reaching its decision, the Third Circuit Court of Appeals noted that Baltimore's fingerprints were not found on the drugs or drug paraphernalia, and there was no evidence that she ever exerted any indirect control over them. *Id.* Furthermore, the fact that the house was employed as a "cut house," a location where drugs are cut and distributed, did not constitute sufficient evidence from which the jury could find that Baltimore was a participant in the drug distribution operation. *Id.* at 683–84.

In *Thorne,* 997 F.2d 1504, the United States Court of Appeals for the District of Columbia held that evidence that a defendant shared a bedroom with four others including his brother where drugs and drug paraphernalia were found in a closet was insufficient to support an inference that the defendant possessed the drugs. *Id.* at 1510. The court emphasized that the drugs were not in plain view so there was no reason to conclude that the defendant knew about them. *Id.* The court also noted that a ledger of drug transactions found in the house containing the names of the other occupants of the house did not include the defendant's. *Id.* Accordingly, the court reversed the defendant's conviction for possession with intent to distribute crack cocaine. *Id.* at 1511.

Prior to its *Brown* decision, the Third Circuit reversed a conviction for heroin possession in *Bonham,* 477 F.2d 1137. In *Bonham,* the police discovered heroin hidden in a recess above a bedroom door behind the door

---

7. At the hearing on Saborit's motions, the government astutely and candidly acknowledged that it did not present a "strong case" against Saborit.

frame. The bedroom was shared by two people. *Id.* at 1138. In reversing the conviction, the Third Circuit stated:

> Here there was nothing except the joint occupancy of the room upon which an inference of possession could be based. A fact finder could only speculate whether both of the room's occupants or a particular one of them even knew of the cache, much less exercised control over the hidden contraband.

*Id.* at 1139. The Third Circuit Court of Appeals distinguished the factual scenario found in *Bonham* from a situation where drugs are in plain view or where there is only one occupant who presumably controls the contents of the room. *Id.* Here, of course, the court is confronted by the same two pivotal facts discussed in *Bonham,* the apartment had multiple occupants and the drugs were not in plain view.

As pointed out above, the significance of such cases here is that they reinforce and buttress the court's concern that the evidence in this case weighs heavily enough against the verdict that a miscarriage of justice may have occurred. Although the court's earlier discussion shows that sufficient evidence existed to support Saborit's conviction, that result was reached only when construing the evidence in the light most favorable to the guilty verdict, giving the government the benefit of all reasonable inferences that may be drawn from the evidence. Employing the less restrictive motion for new trial standard of review called for under Federal Rule of Criminal Procedure 33, the court concludes that the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred in this case. Therefore, the court will set aside the verdict in this case and grant Saborit's motion for new trial.

### III. CONCLUSION

The court concludes that based upon its review of the evidence presented at the close of the government's case, viewing the evidence in a light most favorable to the government, that a reasonable jury could have found Saborit guilty of possessing crack cocaine with the intent to distribute, under 21 U.S.C. § 841(a). Therefore, the court **denies** Saborit's motion for judgment of acquittal. Although the court finds that sufficient evidence existed to support Saborit's conviction, that conclusion was reached only when construing the evidence in the light most favorable to the guilty verdict, giving the government the benefit of all reasonable inferences that may be drawn from the evidence. However, employing the less restrictive motion for new trial standard of review, the court concludes that the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred in this case. Therefore, the court will set aside the verdict in this case and **grant** Saborit's motion for new trial.

IT IS SO ORDERED.