**UNITED STATES of America,
Plaintiff,**

v.

**Erick Arias CAMPOS, Defendant.**

**No. CR00–4086MWB.**

United States District Court,
N.D. Iowa,
Western Division.

Feb. 27, 2001.

Shawn S. Wehde, Special Assist. U.S. Atty., Washington, DC, for U.S.

Jeffrey A. Neary, Assist. Fed. Public Defender, for defendant.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S RENEWED MOTION FOR JUDGMENT OF ACQUITTAL, AND MOTION FOR NEW TRIAL**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. *BACKGROUND* ................................................1183

II. *LEGAL ANALYSIS* ...........................................1184
 A. *Campos's Motion for Judgment of Acquittal* ........................1184
 1. *Standards applicable to motions for judgment of acquittal* ........1184
 2. *Sufficiency of the evidence* ......................................1185
 B. *Campos's Motion for New Trial* ...................................1187
 1. *Standards applicable to motions for new trial* ....................1187
 2. *Weight of the evidence* ..........................................1188
 a. *Caselaw relied on by the government* ......................1189
 b. *Applicability of the caselaw relied on by the government*
 *in this case* ........................................1191

III. *CONCLUSION* ..............................................1192

## I. BACKGROUND

On September 26, 2000, a United States Grand Jury for the Northern District of Iowa returned a two-count indictment charging that Erick Arias Campos ("Campos") did knowingly and intentionally possess with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance (Count 1), in violation of 21 U.S.C. § § 841(a)(1), and 841(b)(1)(B)(viii), and that Campos, an alien who was illegally and unlawfully in the United States, did knowingly possess a firearm and ammunition (Count 2), in violation of 18 U.S.C. § § 922(g)(5)(A) and 924(a)(2). Campos, however, only went to trial on count one of the indictment—that is, the drug charge.[1] The methamphetamine which forms the basis of this charge was discovered as a result of a lawful search of Campos's residence, specifically his bedroom, on September 2, 2000.

On February 5, 2001, the case against Campos proceeded to trial before a jury. At trial, the government called three law enforcement officers to testify, and introduced the following items seized from Campos's bedroom: 50.6 grams of methamphetamine; a .38 caliber Lorcin handgun; an ammunition clip full of .38 ammu-

nition; a box of ammunition; and several forms of false identification. At the close of the government's case, Campos moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. The court reserved ruling on this motion. In his defense, Campos testified along with one of his roommates, namely, Jose Novoa. At the conclusion of all of the evidence, Campos renewed his motion for judgment of acquittal, and, once again, the court reserved ruling on the motion. On February 6, 2001, the jury returned a verdict of guilty as to the charge of possession of methamphetamine with intent to distribute.

On February 9, 2001, Campos filed a timely post-trial motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, as well as a motion for new trial pursuant to Federal Rule of Criminal Procedure 33. The government has resisted Campos's post-trial motions. The court deems the matter fully submitted, and, therefore, turns initially to the standard of review governing motions for judgments of acquittal under Federal Rule of Criminal Procedure 29, and then to a legal analysis of the issues raised by Cam-

---

1. On January 23, 2001, Campos appeared before United States Magistrate Judge Paul A. Zoss and entered a plea of guilty to count two of the indictment—that is, Campos, an alien who was illegally and unlawfully in the United States, did knowingly possess a firearm and ammunition, in violation of 18 U.S.C. § § 922(g)(5)(A) and 924(a)(2). On February 8, 2001, this court accepted Judge Zoss's Report and Recommendation of January 23, 2001, and accepted Campos's plea of guilty as to count two of the indictment in this case.

pos in his motion for judgment of acquittal. Thereafter, but only if necessary, the court will address Campos's motion for new trial

## II. LEGAL ANALYSIS

### A. Campos's Motion for Judgment of Acquittal

#### 1. Standards applicable to motions for judgment of acquittal

The court has considered in detail the standards applicable to motions for judgment of acquittal, *see United States v. Ortiz*, 40 F.Supp.2d 1073 1078–79 (N.D.Iowa 1999) and *United States v. Saborit*, 967 F.Supp. 1136, 1138–40 (N.D.Iowa 1997), and will set forth the highlights of those discussions, as well as some more recent case law, here. Rule 29 of the Federal Rules of Criminal Procedure provides, in pertinent part, as follows:

> The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

FED.R.CRIM.P. 29(a). Although Rule 29 specifically provides for such eventualities, it is well-settled that "[j]ury verdicts are not lightly overturned." *United States v. Hood*, 51 F.3d 128, 129 (8th Cir.1995); *accord United States v. Burks*, 934 F.2d 148, 151 (8th Cir.1991). Rather, the case law governing motions for judgment of acquittal confirms that a significant restraint is placed on a district court's authority to overturn a jury's verdict. *See United States v. Gomez*, 165 F.3d 650, 654 (8th Cir.1999) (observing that a judgment

of acquittal should only be granted "if there is no interpretation of. the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt"); *United States v. Perkins*, 94 F.3d 429, 436 (8th Cir.1996) (" '[t]he standard of review of an appeal concerning the sufficiency of the evidence is very strict, and the verdict of the jury should not be overturned lightly.' ") (quoting *Burks*, 934 F.2d at 151), *cert. denied*, 519 U.S. 1136, 117 S.Ct. 1004, 136 L.Ed.2d 882 (1997).

■ The United States Court of Appeals for the Eighth Circuit has therefore instructed that "[t]he jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *United States v. Moore*, 108 F.3d 878, 881 (8th Cir.1997); *Perkins*, 94 F.3d at 436 (" 'The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt.' ") (quoting *United States v. Erdman*, 953 F.2d 387, 389 (8th Cir.), *cert. denied*, 505 U.S. 1211, 112 S.Ct. 3009, 120 L.Ed.2d 883 (1992)). Here, Campos contends that his motion for judgment of acquittal should be granted because the government's evidence at trial would not permit a reasonable jury to find him guilty beyond a reasonable doubt as to the charge of possession of methamphetamine with intent to distribute.

■ In considering a motion for judgment of acquittal based on the sufficiency of the evidence, the court must "view the evidence in the light most favorable to the guilty verdict, giving the government the benefit of all reasonable inferences that may be drawn from the evidence." [2] *Unit-*

---

2. In *Ortiz*, this court noted that it had discussed in one of its earlier cases, *see Saborit*, 967 F.Supp. at 1140–43, the existence of two apparently inharmonious lines of Eighth Circuit Authority regarding the standard to be applied when considering a challenge to the sufficiency of the evidence to sustain a conviction. *Ortiz*, 40 F.Supp.2d at 1079 n. 1 (citing *Saborit* and referring to *United States v. Baker*,

98 F.3d 330, 338 (8th Cir.1996), *cert. denied*, 520 U.S. 1179, 117 S.Ct. 1456, 137 L.Ed.2d 561 (1997)) (observing that if the evidence reasonably supports two conflicting hypotheses—guilt and innocence—the reviewing court must not disturb the jury's finding) and *United States v. Davis*, 103 F.3d 660, 667 (8th Cir.1996), *cert. denied*, 520 U.S. 1258, 117 S.Ct. 2424, 138 L.Ed.2d 187 (1997) (holding

ed States v. Basile, 109 F.3d 1304, 1310 (8th Cir.), cert. denied, 522 U.S. 866, 118 S.Ct. 173, 139 L.Ed.2d 115 (1997); accord United States v. Madrid, 224 F.3d 757, 761–62 (8th Cir.2000) (stating that "in reviewing the District Court's denial of the motion for acquittal, we view the evidence in the light most favorable to the verdict and will reverse only if no reasonable jury could have found beyond a reasonable doubt that the defendant is guilty of the offense charged") (citation omitted); United States v. Vig, 167 F.3d 443, 447 (8th Cir.1999) (observing that "[w]e review the district court's denial of a motion for judgment of acquittal based on the sufficiency of the evidence by viewing the evidence in the light most favorable to the verdict."). The court can overturn a jury's verdict only if " 'a reasonable fact-finder must have entertained a reasonable doubt about the government's proof" ' of one of the essential elements of the crime charged. United States v. Kinshaw, 71 F.3d 268, 271 (8th Cir.1995) (quoting United States v. Nunn, 940 F.2d 1128, 1131 (8th Cir.1991)). Furthermore, "[t]his standard applies even when the conviction rests entirely on circumstantial evidence." United States v. Davis, 103 F.3d 660, 667 (8th Cir.1996), cert. denied, 520 U.S. 1258, 117 S.Ct. 2424, 138 L.Ed.2d 187 (1997).

 In addition to allowing a conviction to be based on circumstantial and/or direct evidence, the Eighth Circuit Court of Appeals has instructed that "[t]he evidence need not exclude every reasonable hypothesis except guilt." United States v. Baker, 98 F.3d 330, 338 (8th Cir.1996), cert. denied, 520 U.S. 1179, 117 S.Ct. 1456, 137 L.Ed.2d 561 (1997). The court can neither weigh the evidence nor assess the credibility of the witnesses; these tasks belong exclusively to the jury. United States v. Ireland, 62 F.3d 227, 230 (8th Cir.1995) (noting it is the jury's job to judge the credibility of witnesses and to resolve contradictions in evidence). Having examined the appropriate standard of review, the court turns now to its consideration of the defendant's motion.

### 2. Sufficiency of the evidence

 In order to convict Campos of possessing methamphetamine with the intent to distribute it, under 21 U.S.C. § 841(a), the government had to show beyond a reasonable doubt, that: (1) Campos was in possession of methamphetamine; (2) Campos knew that he was, or intended to be, in possession of a controlled substance; and (3) Campos intended to distribute some or all of the controlled substance to another person. Thus, the government had to prove that Campos knowingly possessed the methamphetamine with the intent to distribute. See United States v. McCracken, 110 F.3d 535, 541 (8th Cir.1997) (stating that to convict a defendant on a violation of 21 U.S.C. § 841(a)(1), "the government had to prove that he knowingly possessed the methamphetamine with the intent to distribute") (citations omitted); United States v. Thomas, 58 F.3d 1318, 1322 (8th Cir.1995) (articulating essential elements government must prove to establish a violation of 21 U.S.C. § 841(a)(1)). Intent to distribute controlled substances may be proved by either direct or circumstantial evidence. United States v. Boyd, 180 F.3d 967, 980 (8th Cir.1999); see also

that " '[w]here the government's evidence is equally strong to infer innocence of the crime charged as it is to infer guilt, the verdict must be one of not guilty ...' " quoting United States v. Kelton, 446 F.2d 669, 671 (8th Cir. 1971)). Once again, the court observes as it did in Ortiz and Saborit, that during the last ten years, the Eighth Circuit Court of Appeals has overwhelmingly applied the Baker standard—that is, if the evidence reasonably supports two contrary theories, the reviewing court must not disturb the jury's determination. id. (citing Baker, 98 F.3d at 338); see also United States v. Turner, 157 F.3d 552, 556 n. 5 (8th Cir.1998) (noting apparent discrepancy and following Baker ); United States v. Butler, 238 F.3d 1001, 1003–04 (8th Cir. 2001) (citing Turner ). Regardless of the standard applied in this case, the court concludes that the result as to the defendant's motion for judgment of acquittal would be the same.

*United States v. Buford,* 108 F.3d 151, 154 (8th Cir.1997); *United States v. Haney,* 23 F.3d 1413, 1417 (8th Cir.), *cert. denied,* 513 U.S. 898, 115 S.Ct. 253, 130 L.Ed.2d 174 (1994); *United States v. Schubel,* 912 F.2d 952, 956 (8th Cir.1990). The court also submitted to the jury the lesser included offense of possession with intent to distribute—that is, possession. In order to convict Campos of possession, the government had to prove beyond a reasonable doubt, that: (1) Campos was in possession of methamphetamine; and (2) Campos knew that he was or intended to be in possession of a controlled substance. Significantly, the third element of the offense of possession with intent to distribute methamphetamine, as outlined above, is not an element of the "lesser included" offense of possession of methamphetamine. Campos does not contest that he knowingly possessed 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance. In fact, Campos testified that the methamphetamine belonged to him. However, he argues that it was for his own use, and thus, he challenges the sufficiency of the evidence with respect to his conviction for possession with intent to distribute.

■ Viewing the totality of the evidence in the light most favorable to the government, as it must on a judgment of acquittal, the court concludes that the evidence is sufficient for the jury to have found that Campos was guilty beyond a reasonable doubt of possession of methamphetamine with intent to distribute. At trial, the government presented the testimony of Sioux City police officer Brad Downing. Officer Downing testified that on September 2, 2000, he, and police officer De Faris, were dispatched to the residence of 1723 Center Street in Sioux City, because of a complaint from a citizen regarding marijuana plants being grown behind the 1723 Center Street residence. After arriving at the 1723 Center Street address, officer Downing contacted all three of the occu-

pants who resided in that residence, and obtained both verbal and written consent to search the residence for drugs. The three residents were Campos, Jose Novoa, and the Calixto family. Officer Downing testified that no illegal items were found in either bedroom belonging to the Calixto family or Jose Novoa. In searching Campos's bedroom, however, officer Downing testified that he located several items located in, and around, a shoe box on the floor, near Campos's bed. Specifically, in the shoe box, officer Downing located a plastic bag containing methamphetamine, a .38 caliber Lorcin handgun, an ammunition clip full of .38 ammunition, a box of ammunition, and numerous false identifications. The government also presented the testimony of Special Agent Michael Hill of the Drug Enforcement Administration ("DEA"). Special Agent Hill testified that, based on his education, training and experience, the quantity of the methamphetamine discovered in Campos's bedroom (50.6 grams), the presence of a firearm and ammunition in close proximity to the drugs, and the presence of false identifications are all evidence consistent with the distribution of methamphetamine.

In his defense, Campos called his roommate, Jose Novoa, who testified that although he never witnessed Campos directly ingest the methamphetamine, he witnessed Campos arrange the methamphetamine in a line formation, presumably to ingest soon thereafter. Thereafter, Campos himself testified that he was addicted to methamphetamine and that the 50.6 grams of methamphetamine that the police recovered from his bedroom was for his personal use only. The government attempted to call into question the credibility of Campos's testimony by pointing out, *inter alia,* that he pled guilty to a felony gun offense, and that he initially denied ownership of the marijuana plants when the law enforcement officers initially arrived at the 1723 Center Street residence. The government also highlighted the implausibility of Campos's testimony as to how he came into posses-

sion of the methamphetamine and the firearm, specifically, the amount of money he paid for the methamphetamine and firearm.

In reviewing the sufficiency of the evidence on defendant's motion for judgment of acquittal, this court must "view the evidence in the light most favorable to the government, and resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." *Surratt,* 172 F.3d at 562 (citations and internal quotations omitted). Viewing the evidence in such a light, and giving the government the benefit of all reasonable inferences, the court concludes that there is sufficient evidence in the trial record to support the jury's conviction of Campos on the possession of methamphetamine with intent to distribute. It was the jury's function to evaluate Campos's credibility and to weigh his testimony against the government's evidence of intent to distribute. Therefore, the court will not overturn the jury's verdict of guilt on the charge of possessing with intent to distribute methamphetamine and acquit Campos. *See Surratt,* 172 F.3d at 565 ("It is not necessary for the evidence before the jury to rule out every reasonable hypothesis of innocence. It is enough that the entire body of evidence be sufficient to convince the fact-finder beyond a reasonable doubt of the defendant's guilt.") (citing *United States v. Noibi,* 780 F.2d 1419, 1422 (8th Cir.1986)). Accordingly, the court denies Campos's motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.

In addition to filing a motion for judgment of acquittal, Campos filed a motion for new trial pursuant to Federal Rule of Criminal Procedure 33. Because these motions have differing standards, the court will proceed to consider Campos's motion for new trial pursuant to Federal Rule of Criminal Procedure 33.

### B. Campos's Motion for New Trial

Campos has also moved for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Because the standards under which this motion is evaluated differ substantially from those applied to a motion for judgment of acquittal, the court will begin by setting forth the governing standards, and will then turn to its consideration of the defendant's motion for new trial.

### 1. Standards applicable to motions for new trial

In *Saborit,* this court also had occasion to consider in some detail the standards applicable to motions for new trial. *Saborit,* 967 F.Supp. at 1144–45. Rather than repeat that discussion in its entirety here, the court will again set forth the highlights of these standards.

■ Federal Rule of Criminal Procedure 33 provides in relevant part as follows: "The court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." FED. R.CRIM.P. 33. District courts have broad discretion in passing upon motions for new trial and such rulings are subject to reversal only for a clear abuse of discretion. *See United States v. Wilkins,* 139 F.3d 603, 604 (8th Cir.1998); *United States v. Brown,* 108 F.3d 863, 866 (8th Cir.1997); *United States v. Blumeyer,* 62 F.3d 1013, 1015 (8th Cir.1995), *cert. denied,* 516 U.S. 1172, 116 S.Ct. 1263, 134 L.Ed.2d 212 (1996).

■ A court evaluates a Rule 33 motion from a different vantage point than it evaluates a Rule 29 motion for judgment of acquittal. *Ortiz,* 40 F.Supp.2d at 1082. Indeed, "[a] district court's power to order a new trial is greater than its power to grant a motion for acquittal." *United States v. Ruiz,* 105 F.3d 1492, 1501 (1st Cir.1997); *accord United States v. Bennett,* 956 F.2d 1476, 1481 (8th Cir.1992) ("This narrowly constricted power of review [applicable to motions for judgment

of acquittal] is in contrast to the district court's broad discretion in ruling upon a motion for new trial."); *United States v. A. Lanoy Alston, D.M.D., P.C.,* 974 F.2d 1206, 1211 (9th Cir.1992) ("A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal."). In assessing whether a defendant is entitled to a new trial on the ground that the verdict is contrary to the weight of the evidence, "the district court weighs the evidence and evaluates anew the credibility of the witnesses to determine if a miscarriage of justice may have occurred." *Davis,* 103 F.3d at 668; *accord United States v. Misle Bus & Equip. Co.,* 967 F.2d 1227, 1232 (8th Cir.1992); *United States v. Brown,* 956 F.2d 782, 786 (8th Cir.1992). As the United States Court of Appeals for the Eighth Circuit has explained:

> "When a motion for a new trial is made on the ground that the verdict is contrary to the weight of the evidence, the issues are far different from those raised by a motion for judgment of acquittal. The question is whether he is entitled to a new trial. In assessing the defendant's right to a new trial, the court must weigh the evidence and in doing so evaluate for itself the credibility of the witnesses." *United States v. Lincoln,* 630 F.2d [1313,] 1316 [ (8th Cir.1980) ]. The court will only set aside the verdict if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred.

*United States v. Rodriguez,* 812 F.2d 414, 417 (8th Cir.1987). The authority to grant new trials, however, "should be used sparingly and with caution." *United States v. Lincoln,* 630 F.2d 1313, 1319 (8th Cir. 1980).

### 2. *Weight of the evidence*

■ In his motion for new trial, Campos challenges the weight of the evidence supporting his conviction, asserting that the evidence weighs heavily enough against the verdict to indicate that a miscarriage of justice has occurred. As the court indicated earlier, to convict Campos of possession of methamphetamine with intent to distribute it, the government had to prove that he knowingly possessed the methamphetamine with the intent to distribute. *See McCracken,* 110 F.3d at 541 (stating that to convict a defendant on a violation of 21 U.S.C. § 841(a)(1), "the government had to prove that he knowingly possessed the methamphetamine with the intent to distribute") (citations omitted); *Thomas,* 58 F.3d at 1322 (articulating essential elements government must prove to establish a violation of 21 U.S.C. § 841(a)(1)).

Here, the fighting issue is whether the 50.6 grams of methamphetamine found in Campos's bedroom was for his personal use only. At trial, Campos readily conceded that he was in possession of the methamphetamine, however, he argued that he did not possess the methamphetamine with the intent to distribute it. At the close of the government's case, this court characterized the weight of the evidence presented by the government against Campos for possession with intent to distribute as "razor thin." The court maintains this view of the government's evidence. Although the government introduced the 50.6 grams of methamphetamine found in Campos's bedroom, as well as a firearm (unloaded), ammunition and various false identifications, all of which were discovered in the immediate vicinity of the methamphetamine, officer Downing testified that, in addition to discovering these items, he also discovered a butane lighter near the methamphetamine, and a pen casing in the dining room of the residence. That pen casing was subsequently analyzed and determined to have methamphetamine residue on the tip of it. Campos testified that he was a user of methamphetamine and that one of the ways he ingested methamphetamine was with the pen casing that officer Downing discovered. As this court mentioned earlier, the government did endeavor to call into question Campos's credibility by honing in on

the implausibility of Campos's testimony as to how he came into possession of the methamphetamine and firearm. Campos testified that he purchased from some unknown individual at a bar the methamphetamine for $200.00 and the .38 Lorcin handgun for $50.00. Campos also testified that the same individual gave him the box of ammunition for free. While the court finds this portion of Campos's testimony incredible, the court finds the portion of Campos's testimony that he was a user of methamphetamine credible. The court makes this finding based on the undisputed fact that methamphetamine residue was present on the tip of a pen casing found in Campos's residence, and officer Downing's testimony that Campos was the only one in the 1723 Center Street residence who possessed methamphetamine. This evidence corroborates Campos's testimony that he was, in fact, a user of methamphetamine. The question, therefore, becomes whether, in addition to using the methamphetamine himself, Campos also possessed the methamphetamine with the intent to distribute it?

As previously stated, intent to distribute controlled substances may be proved by either direct or circumstantial evidence. *Boyd*, 180 F.3d at 980; *see also Buford*, 108 F.3d at 154; *Haney*, 23 F.3d at 1417; *Schubel*, 912 F.2d at 956. The Eighth Circuit Court of Appeals recently reiterated the evidence necessary to demonstrate that a defendant had the intent to distribute a controlled substance, as follows:

> We have previously addressed the evidence necessary to demonstrate that a defendant had the intent to distribute a controlled substance. [I]ntent to distribute may be established by circumstantial evidence, including such things as quantity, purity and presence of firearms, cash, packaging material, or other distribution paraphernalia. Moreover, we recognize that intent to distribute may be inferred solely from the possession of large quantities of narcotics. However, proof of possession of a small

amount of a controlled substance, standing alone, is an insufficient basis from which an intent to distribute may be inferred. The underlying theme of such cases is that the defendant possessed a quantity which was more than he would possess for his own use.

*United States v. Moore*, 212 F.3d 441, 444 (8th Cir.2000) (citing *United States v. Lopez*, 42 F.3d 463, 467 (8th Cir.1994)) (internal quotations and citations omitted); *see also Boyd*, 180 F.3d at 980 (stating that evidence showing intent to distribute narcotics includes the quantity of the drug, the purity of the drug, presence of firearms, cash, and packaging material); *Schubel*, 912 F.2d at 956 (explaining that the presence of equipment to weigh and measure the narcotics, paraphernalia used to aid in their distribution, large sums of cash, and presence of firearms are common indicia of drug trafficking and are all circumstantial evidence of intent to distribute). In this case, the government offered no direct evidence of distribution. Rather, the government sought to show Campos's intent to distribute based on circumstantial evidence. The court, however, finds that there was a significant lack of circumstantial evidence that is common indicia of drug trafficking here. For example, the government did not present any evidence of drug notes, extra baggies or other packaging material, a scale or other equipment to weigh and measure the narcotics, any amount of cash, razors, cutting agents, a pager, or a beeper found in Campos's bedroom or residence. Moreover, there was no indication of any traffic at the residence, and there was no drug intelligence regarding Campos's drug trafficking before or after his arrest. Notwithstanding, the government argues that there is caselaw that supports the jury's verdict based on the evidence presented in this case.

### a. Caselaw relied on by the government

The government relies heavily on the quantity of methamphetamine (50.6 grams) that Campos possessed to show that he

intended to distribute it, and relies on the following authorities: *United States v. Schubel*, 912 F.2d 952 (8th Cir.1990); *United States v. Boyd*, 180 F.3d 967 (1999); *United States v. Lopez*, 42 F.3d 463 (8th Cir.1994). As will be demonstrated below, however, the evidence presented by the government in all three of these cases is significantly different than the evidence presented in this case.

In *United States v. Schubel*, 912 F.2d 952 (8th Cir.1990), the defendant challenged the sufficiency of the government's evidence with respect to his conviction for intent to distribute methamphetamine. The Eighth Circuit Court of Appeals concluded that the evidence was consistent with possession of contraband with the intent to distribute, and thus, affirmed the judgment of the district court. *Schubel*, 912 F.2d at 956. The Eighth Circuit Court of Appeals arrived at this decision based on the following evidence: a plastic container containing 46.6 grams of methamphetamine, which was found on the shelf in the defendant's portion of the house; a cassette holder containing a plastic bag which contained 2 grams of methamphetamine and 11 individually wrapped plastic bags of white powder, one of which was later analyzed and determined to contain 3.3 grams of methamphetamine; 5.7 grams of white solid material containing methamphetamine was found in the living room; a small gram scale; an electronic digital scale; a deering scale; a sifting kit; numerous small baggies; numerous gram vials; a programmable scanner; $1,500.00 in cash; numerous firearms and ammunition, including a loaded .38 caliber pistol, a loaded .357 magnum, a loaded 9mm handgun, a .22 caliber pistol, and a semi automatic 12 gauge shotgun; and a "pipe bomb" and other various explosive devices. Thus, the *Schubel* court did not conclude that there was sufficient evidence to support the defendant's conviction for intent to distribute based solely on the quantity of the methamphetamine. Rather, as illustrated above, there was a myriad of evidence, all of which was indicia of drug trafficking, that was present in addition to the methamphetamine which the Eighth Circuit Court of Appeals considered in reaching its decision.

In *United States v. Boyd*, 180 F.3d 967 (8th Cir.1999), the defendant also challenged the sufficiency of the evidence with respect to the intent to distribute conviction, contending that the quantity of cocaine discovered—that is, 33.72 grams—was a small amount of cocaine and one could reasonably infer that such amount was for his personal use. *Boyd*, 180 F.3d at 980. The Eighth Circuit Court of Appeals found otherwise, and affirmed the judgment of the district court that an intent to distribute could be inferred from the evidence. *Id.* Along the same line of reasoning as the *Schubel* court, the *Boyd* court did not base its decision solely on the quantity of cocaine, but in light of evidence that a gun was located right next to a black bag located in the defendant's bedroom, which contained cocaine, identification forms bearing aliases, a triple-beam scale and cutting agents. *Id.* at 980.[3]

---

**3.** The government argues that the *Boyd* court was presented with "facts remarkably similar to this case," *see* United States of America Brief at 7, and submits to this court that the *Boyd* court "held that a gun located next to a black bag containing drugs (33 grams, cocaine), identification and false identification of a defendant is sufficient evidence of an intent to distribute which may be inferred from that evidence." This is simply not the holding of the *Boyd* court however. Indeed, the *Boyd* court specifically held that "the following evidence shows that Boyd possessed the cocaine for distribution and sale: a gun was located right next to the black bag; *a triple beam scale and cutting agents were inside the black bag;* and the black bag contained identification forms bearing aliases." *Boyd*, 180 F.3d at 980 (citations omitted) (emphasis added). Significantly absent from the government's interpretation of the holding of the Eighth Circuit Court of Appeals in *Boyd* is the actual presence of distribution paraphernalia in close proximity to the cocaine—a triple beam scale and cutting agents—which the *Boyd* court considered when reaching its decision in affirming the judgment of the dis-

In *United States v. Lopez*, 42 F.3d 463 (8th Cir.1994), the defendant similarly challenged the sufficiency of the evidence with respect to the possession with intent to distribute methamphetamine conviction, arguing that his possession of 4 grams of methamphetamine (47% pure) was insufficient to prove beyond a reasonable doubt his intent to distribute. *Lopez*, 42 F.3d at 467. The Eighth Circuit Court of Appeals agreed with the defendant that 4 grams of methamphetamine "could not single-handedly support an inference of intent to distribute." *Id.* at 468 (citations omitted). Therefore, the *Lopez* court, relying on other authority, reasoned that because the quantity or quantity and purity combined were insufficient to support a reasonable inference of an intent to distribute, it would look to "additional circumstances or evidence consistent with an intent to distribute narcotics." *Id.* (citation omitted). In so doing, the *Lopez* court ultimately concluded that the government failed to produce sufficient additional evidence from which a jury could draw a reasonable inference that the defendant intended to distribute the methamphetamine, explaining that "the drug was not packaged for resale, and the government did not introduce evidence of a large amount of unexplained cash or other distribution paraphernalia." *Id.* The *Lopez* court further concluded that a reasonable jury could not infer that the presence of an unloaded rifle and shotgun located in the trunk of the car along with camping gear, including duck calls and waders, were "tools" of the drug trade. *Id.*

### b. Applicability of the caselaw relied on by the government in this case

This court recognizes that the *Schubel* court sustained the inference of intent to distribute in a case involving the quantity of drugs comparable to the amount found in Campos's possession at the time of his arrest. In *Schubel*, as well as in *Boyd*, however, the government's proof included

trict court that an intent to distribute could be

additional circumstances or evidence consistent with an intent to distribute narcotics, as outlined above. In fact, it was because of the government's lack of additional evidence consistent with an intent to distribute narcotics that the Eighth Circuit Court of Appeals, in *Lopez*, determined that there was insufficient evidence to convict the defendant on the intent to distribute charge. In this case, although Campos possessed significantly more than 4 grams of methamphetamine, as was the case in *Lopez*, DEA Agent Hill testified that it was possible that the 50.6 grams of methamphetamine found in Campos's bedroom was for his personal use. Campos testified that he was addicted to methamphetamine and that he used methamphetamine. There was a pen casing found in his residence, containing methamphetamine residue, and a butane lighter located near the methamphetamine. All of this evidence is consistent with personal use and possession, and not the distribution of methamphetamine. Indeed, the methamphetamine was not packaged in a manner consistent with distribution, and despite a complete search of Campos's automobile and residence, the government offered no evidence of distribution paraphernalia or any amounts of unexplainable cash. The government did introduce the .38 Lorcin handgun, which was unloaded, and the various forms of false identification located near the methamphetamine. While the court finds that the presence of a firearm and the false identifications are consistent with drug trafficking, *see United States v. Bryson*, 110 F.3d 575, 585 (8th Cir.1997) (holding that evidence of a loaded firearm next to drug related items is probative of intent to distribute) and *United States v. Walcott*, 61 F.3d 635, 638 (8th Cir.1995) (holding that the use of aliases and other conduct to hide identification is consistent with involvement in the drug trade), the court does not find them to be probative of drug trafficking in this case, because of the presence of user

inferred from the evidence.

paraphernalia discovered in Campos's residence. In its opening statement and closing argument, the government repeatedly indicated that there was a lack of user paraphernalia to support an inference that Campos was only a user. This was not the case however. Indeed, the pen casing with methamphetamine residue was discovered in Campos's residence, and in light of the evidence that Campos was the only individual in the residence who possessed methamphetamine, the inference is strong that he was using the methamphetamine with that pen casing. Additionally, the court finds it especially significant that the government's strategy in this case to show Campos's intent to distribute methamphetamine was based not on the presence of distribution paraphernalia, but on the lack of any user paraphernalia. *Cf. Moore,* 212 F.3d at 444 (explaining that intent to distribute may be established by circumstantial evidence, including such things, as quantity, purity and presence of firearms, cash, packaging material, or other distribution paraphernalia); *Boyd,* 180 F.3d at 980 (stating that evidence showing intent to distribute narcotics includes the quantity of the drug, the purity of the drug, presence of firearms, cash, and packaging material); *Schubel,* 912 F.2d at 956 (explaining that the presence of equipment to weigh and measure the narcotics, paraphernalia used to aid in their distribution, large sums of cash, and presence of firearms are common indicia of drug trafficking and are all circumstantial evidence of intent to distribute). This court instructed the jury that the burden is always upon the prosecution to prove guilt beyond a reasonable doubt, and unless the prosecution proves beyond a reasonable doubt that Campos has committed each and every essential element of the offense charged in the indictment, you must find Campos not guilty of the offense charged. In weighing the evidence, the court is of the view that the government did not meet its burden in this case.

Although the court concluded earlier regarding Campos's motion for judgment of acquittal that there was sufficient evidence presented by the government to support Campos's conviction, that result was reached only when construing the evidence in the light most favorable to the guilty verdict, giving the government all reasonable inferences that may be drawn from the evidence. Applying the less restrictive standard for review applicable to motions for new trial, however, the court concludes that the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred in this case. Therefore, the court will set aside the verdict in this case and grant Campos's motion for new trial.

### III. CONCLUSION

The court concludes that based upon its review of the evidence, and viewing the evidence in the light most favorable to the government, a reasonable jury could have found Campos did knowingly and unlawfully possess with the intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance (Count 1), in violation of 21 U.S.C. § § 841(a)(1) and 841(b)(1)(B)(viii). Consequently, the court **denies** Campos's motion for judgment of acquittal. However, applying the less restrictive standard of review for motions for new trial, the court concludes that the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred in this case. Consequently, the court will set aside the verdict in this case and **grant** Campos's motion for new trial.

**IT IS SO ORDERED.**